NO. 07-09-0370-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

AUGUST 10, 2010

_____


DAYBREAK COMMUNITY SERVICES, INC., APPELLANT

V.

LISA CARTRITE, AS LEGAL REPRESENTATIVE OF
THE ESTATE OF LACY DONN VASQUEZ, APPELLEE

_____

FROM THE 47TH DISTRICT COURT OF RANDALL COUNTY;

NO. 60,754-A; HONORABLE HAL MINER, JUDGE

_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.


**OPINION**


Presenting two issues, Daybreak Community Services, Inc. ("Daybreak")
challenges the trial court's order denying its Motion to Dismiss the healthcare liability
suit filed by Lisa Cartrite ("Cartrite"), as legal representative of the Estate of Lacy Donn
Vasquez, deceased. Daybreak questions (1) whether an expert report delivered prior to
the filing of a health care liability claim satisfies the service requirements of section

74.351(a) of the Texas Civil Practice and Remedies Code, and (2) whether a health care liability claimant's misidentification of a health care provider entitles the claimant to a new 120-day expert report deadline under section 74.351(a) of the Code. We affirm.

## Factual and Procedural Background

On September 23, 2006, Lacy Donn Vasquez, a twenty-three year old mentally retarded resident of Harvard House, a group home owned and operated by Daybreak Community Services, Inc., was found by staff in a bathtub with her face underwater.[1] According to Cartrite's pleadings, Vasquez was to be closely monitored and should not have been allowed to take an unsupervised bath. After being found by staff, Vasquez was hospitalized and placed on life support with a poor prognosis. Life support was removed later that night and she died in the early morning hours of September 24, 2006.

On October 10, 2006, Cartrite engaged counsel for the purpose of pursuing a health care liability claim on behalf of Lacy's estate. That day, Cartrite's counsel sent a letter, simply addressed to "Daybreak" at its Amarillo address, notifying them of his representation. Two months later, on December 10, 2007, Cartrite's counsel sent notice of her claim to an attorney representing Daybreak. Enclosed with that notice was the curriculum vitae and report of Frances Foster, M.S.N., A.P.R.N., B.C. The notice specifically claimed to be in satisfaction of the statutory requirements of sections 74.051

---

[1]The facility operated by Daybreak Community Services, Inc. is a certified home and community-based services waiver program for persons with mental retardation and, as such, Daybreak Community Services, Inc. is a "health care provider" for purposes of chapter 74 of the Texas Civil Practice and Remedies Code. Tex. Civ. Prac. and Rem. Code Ann. §§ 74.001(a)(11)(I) and (a)(12)(A)(vii) (Vernon 2005).

and 74.351 of the Texas Civil Practices and Remedies Code.[2]  In that letter Cartrite's counsel stated that she was "willing to mediate her claims and avoid a lawsuit, if possible."

In response to the December 10 letter, on January 10, 2008, Daybreak's counsel corresponded with Cartrite's counsel, notifying him, among other things, the following:

> [w]ith respect to Nurse Foster's report and CV, it appears that same have been forwarded to comply with § 74.351 regarding "expert reports." Though we will review and consider the opinions of Nurse Foster, the production of her report at this time is premature.

After settlement attempts were unsuccessful, on April 15, 2008, Cartrite filed a health care liability suit alleging, among other claims, medical malpractice and gross negligence against "Daybreak Group, Ltd. Co." ("Daybreak Group").  The petition provided that service could be accomplished by serving "registered agent Jeanne C. Page, 2505 S. I-35W, Burleson, Texas 76028."  Daybreak Group filed an original answer together with a motion to transfer venue.  On November 7, 2008, counsel for Daybreak Group served a letter on Cartrite's counsel reminding him of earlier correspondence in which counsel noted that the December 2007 furnishing of the pre-suit expert report and curriculum vitae were premature.  Counsel for Daybreak Group continued in the letter, "[p]laintiff did not serve Daybreak or its counsel with a written expert report within 120 days from the date suit was filed."  Counsel concluded that Cartrite had failed to comply with section 74.351(a) and consequently, discovery should be stayed under section 74.351(s).

---

[2]Unless otherwise designated, all references herein to "§" or "section" are to the Texas Civil Practice and Remedies Code Annotated (Vernon 2005 and Supp. 2009).

Three days later, Cartrite's counsel responded by letter expressing discontent with Daybreak Group's "gotcha" letter. Cartrite's counsel's letter included post-suit service, this time via facsimile, of Nurse Foster's expert report and curriculum vitae.

On January 9, 2009, counsel for Cartrite and Daybreak Group entered into an agreed order on a change of venue to Randall County and the suit proceeded. On May 26, 2009, Daybreak Group filed a traditional and no-evidence motion for summary judgment alleging, in part, as grounds:

> Daybreak Group, Ltd. Co. (Daybreak Group) does not own or operate Harvard House. Moreover, Daybreak Group does not provide health care or medical care to residents of Harvard House, and did not provide any such care to decedent Lacy Donn Vasquez. Simply stated, Daybreak Group provides financial, accounting, payroll and administrative support services to Daybreak Community Services.

Approximately six weeks later, the parties entered into a Rule 11 agreement, the terms of which would allow Cartrite to amend her pleadings to substitute the correct defendant, "Daybreak Community Services, Inc.," and in return, Daybreak Group would withdraw its motion for summary judgment.[3]

On July 6, 2009, Cartrite filed her First Amended Petition against "Daybreak Community Services, Inc.," a health care provider, alleging, among other claims, gross negligence and medical malpractice. The amended petition provided that service could be accomplished by serving "registered agent Jeanne C. Page, 2505 S. I-35W, Burleson, Texas 76028."[4] Three days after amending her petition, Cartrite served

---

[3]The motion for summary judgment was withdrawn a week later.

[4]The registered agent and address for both Daybreak Group, Ltd. Co. and Daybreak Community Services, Inc. are the same.

4

Daybreak Community Services, Inc., by telephonic document transfer, with Nurse Foster's expert report and curriculum vitae. That same day, Daybreak Community Services, Inc. filed its Motion to Dismiss For Failure to Comply with Texas Civil Practice and Remedies Code § 74.351. Daybreak alleged that the pre-suit expert report provided on November 10, 2008, did not constitute service of an expert report within 120 days after suit was filed. Daybreak continued that the 120 day deadline expired on August 13, 2008, and Cartrite did not "serve" Nurse Foster's report or another report before that deadline. Thus, Daybreak concluded, the service requirements of section 74.351(a) had not been satisfied. Relying on subparagraph (b) of the statute, Daybreak requested dismissal of the suit with prejudice together with an award of attorney's fees and costs.

By her response to the motion to dismiss, Cartrite urged the trial court to deny the motion to dismiss her claims for failure to "re-serve" the same exact documents Daybreak already possessed and asserted that Daybreak had not been prejudiced. She argued the Legislature's intent in requiring early service of expert reports to facilitate early settlements, reduce costs, and discourage frivolous lawsuits was satisfied. She further argued that Daybreak Community Services, Inc. was served "no later than 120 days after Daybreak Community Services, Inc. became a Defendant in the lawsuit."

Daybreak filed a reply to Cartrite's response noting that the time in which to file an expert report begins with the filing of an original petition. Relying on the doctrine of misidentification, rather than misnomer, it also refuted Cartrite's claim that she should be entitled to a *new* 120 day deadline after filing her first amended petition correctly

5

naming Daybreak Community Services, Inc.  On October 29, 2009, the trial court signed

an Order Denying Defendant's Motion to Dismiss and this accelerated appeal followed.

## Applicable Law

Before the repeal of the Medical Liability and Insurance Improvement Act of

Texas in 2003,[5] former article 4590i, section 13.01 provided in part:[6]

> (d) [n]ot later than the later of the *180th* day after the date on which a health care liability claim is filed . . . , the claimant shall, for each physician or health care provider against whom a claim is asserted:
>
>> (1) *furnish* to counsel for each physician or health care provider one or more expert reports, with a curriculum vitae of each expert listed in the report . . . .

(Emphasis added).  After the repeal of the Act, the Legislature codified the laws

governing health care liability claims in chapter 74 of the Texas Civil Practice and

Remedies Code.[7]  As pertinent here, after the 2003 enactment, section 74.351(a)

provided:[8]

> [i]n a health care liability claim, a claimant shall, not later than the *120th* day after the date the claim was filed, *serve* on each party or the party's attorney one or more expert reports, with a curriculum vitae for each expert listed in the report . . . .

---

[5] *See* Act of June 2, 2004, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884.

[6] *See* Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985, 986.

[7] *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, §§ 10.01-.09, 2003 Tex. Gen. Laws 847, 864-84.

[8] *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875.

(Emphasis added).  Significant changes in 2003 included decreasing the number of days in which to provide an expert report from 180 to 120 and changing the manner in which the report is provided from "furnish" to "serve."  In 2005, the Legislature amended section 74.351(a) to provide:[9]

> [i]n a health care liability claim, a claimant shall, not later than the *120th* day after the date the *original petition* is filed, serve on each party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted. . . .

(Emphasis added).  The only change made in 2005 was the substitution of "original petition" for "claim."

Because Cartrite's cause of action accrued in September 2006, we will apply chapter 74 of the Texas Civil Practice and Remedies Code as it currently exists, including the 2005 amendment.[10]

## Standard of Review

A trial court's decision on a motion to dismiss under section 74.351 is reviewed for abuse of discretion.  *Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006).  A trial court has no discretion in determining what the law is or in applying the law to the facts. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).  Questions of law are subject to a de novo review.  *See generally Johnson v. City of Fort Worth*, 774 S.W.2d 653, 656 (Tex. 1989) (holding that "matters of statutory construction are questions of law for the

---

[9]*See* Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 Tex. Gen. Laws 1590.

[10]*Id.* at § 2 (providing "[t]his Act applies only to a cause of action that accrues on or after the effective date of this Act.")

court to decide rather than issues of fact"). However, once we determine the proper construction of section 74.351(a), we must then review whether the trial court abused its discretion in the manner in which it applied the statute to the facts of the case. *Palladian Bldg. Co. v. Nortex Foundation Designs, Inc.,* 165 S.W.3d 430, 436 (Tex.App.--Fort Worth 2005, no pet.). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner or without reference to any guiding rules or principles. *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003).

## Statutory Construction of Chapter 74

Any legal term or word of art used in chapter 74, not otherwise defined in the chapter, shall have such meaning as is consistent with the common law. § 74.001(b). This provision essentially restates the rule of statutory construction that terms in a statute are to be given their ordinary meaning. *See* Tex. Gov't Code Ann. § 312.002(a) (Vernon 2005). *See also Kendrick v. Garcia*, 171 S.W.3d 698, 704 (Tex.App.--Eastland 2005, pet. denied).

The primary goal of statutory construction is to determine and give effect to the Legislature's intent. *Leland v. Brandal*, 257 S.W.3d 204, 206 (Tex. 2008). We look first to the statute's language to determine that intent, as we consider it "a fair assumption that the Legislature tries to say what it means, and therefore the words it chooses should be the surest guide to legislative intent." *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999). Furthermore, we presume the Legislature intended a just and reasonable result by enacting the statute. Tex. Gov't Code Ann. § 311.021(3) (Vernon 2005). The general rule for statutory interpretation applies unless

8

enforcing the plain language of the statute as written would produce absurd results. *See Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009).

The purpose behind the adoption of section 74.351(a) was, among other things, to "remove unwarranted delay and expense, to accelerate the disposition of non-meritorious cases, and to give hard--and--fast deadlines for the serving of expert reports." *Intracare Hosp. N. v. Campbell*, 222 S.W.3d 790, 797 (Tex.App.--Houston [1st Dist.] 2007, no pet.). The 2003 codification created a statute of limitations type deadline before which expert reports must be served. *See Ogletree v. Matthews*, 262 S.W.3d 316, 319 (Tex. 2007). If no report was served before the 120 day deadline, the Legislature denied trial courts the discretion to deny motions to dismiss or grant extensions. *Badiga v. Lopez*, 274 S.W.3d 681, 683 (Tex. 2009). This seemingly harsh result comports with the Legislature's effort to "reduce excessive frequency . . . of health care liability claims . . . ." *Ogletree*, 262 S.W.3d at 320 (citing Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.11(b)[(1)], 2003 Tex. Gen. Laws 847, 884)).

In 2005, section 74.351(a) was amended to require expert reports to be filed not later than 120 days after the *original petition* is filed. The purpose of the amendment was to "clarify" the timing of when an expert report is due. *See Methodist Charlton Medical Center v. Steele*, 274 S.W.3d 47, 50 (Tex.App.--Dallas 2008, pet. denied). The Legislature rationalized the change as follows:

> [s]ince the passage of House Bill 4 in the 78th Session, there has been some confusion regarding the timing of when an expert report is due on a medical malpractice case. Some have argued that the report is due 120 days from the date of the statutory notice letter, instead of 120 days from the date of the filing of the original petition. It was the intent of HB 4 that the report be triggered by the filing of the lawsuit.

*See Padre Behavioral Health Sys.*, *LLC v. Chaney*, 310 S.W.3d 78, 84-85 (Tex.App.--Corpus Christi 2010, no pet. h.) (citing *Osonma v. Smith*, No. 04-08-00841-CV, 2009 Tex.App. LEXIS 4959, at \*4 (Tex.App.--San Antonio July 1, 2009, pet. denied)).  *See also Stroud v. Grubb*, No. 01-09-00945-CV, 2010 Tex.App. LEXIS 3675, at \*7 (Tex.App.--Houston [1st Dist.] May 13, 2010, pet. filed June 28, 2010) (citing House Comm. on Civil Practices, Bill Analysis, Tex. H.B. 2645, 79th Leg. R.S. (2005))*.*

## Analysis

## I.  Pre-suit Production of an Expert Report

By issue one, Daybreak maintains the trial court erred in denying its motion to dismiss because pre-suit production of an expert report does not comply with the requirements of section 74.351(a).  Daybreak relies on *Poland v. Ott*, 278 S.W.3d 39 (Tex.App.--Houston [1st Dist.] 2008, pet. denied)(subsequent opinion at *Poland v. Ott,* No. 01-07-00199-CV, 2009 Tex.App. LEXIS 3766 (Tex.App.--Houston [1st Dist.] Jan. 22, 2009, pet. denied),[11] *St. Lukes Episcopal Hosp. v. Poland*, 288 S.W.3d 38 (Tex.App.--Houston [1st Dist.] 2009, pet. denied), and *Offenbach v. Stockton*, 285 S.W.3d 517 (Tex.App.--Dallas 2009, pet. granted Feb. 12, 2010), in support of its position that providing a pre-suit expert report does not satisfy the requirements of chapter 74 of the Code.  *See generally St. Lukes Episcopal Hosp*, 288 S.W.3d at 44 (applying the pre-2005 version of section 74.351(a) and holding that the 120 day period

---

[11]The 1st Court of Appeals originally issued an opinion in Cause No. 01-07-00199-CV on January 31, 2008.  That opinion was withdrawn and a second opinion was issued in its stead on December 19, 2008.  That second opinion appears at 278 S.W.3d 39.  A third opinion was issued on January 22, 2009, again purporting to withdraw the opinion of January 31, 2008 and issuing a new opinion in its stead.  The January 22, 2009 opinion appears at *Poland v. Ott,* No. 01-07-00199-CV, 2009 Tex. App. LEXIS 3766 (Tex.App.--Houston [1st Dist.] Jan. 22, 2009, pet. denied).

in which to file an expert report was triggered by the filing of a health care liability claim); *Offenbach*, 285 S.W.3d at 521-22 (applying the pre-2005 version of section 74.351(a) and holding that pre-suit service of an expert report on a potential defendant's insurance carrier did not satisfy the statute). Cartrite submits that section 74.351 is unambiguous, setting a deadline and not a window, by allowing service any time *not later than* the *120th* day after the date the claim was filed. Cartrite relies heavily on Justice Jennings's dissents in *Ott*, 278 S.W.3d at 43, and *St. Lukes Episcopal Hosp.*, 288 S.W.3d at 54, in support of her arguments.

These cases, all involving pre-suit service of expert reports, are, however, distinguishable from the case at bar. Each of these cases involve application of section 74.351(a) as it existed after the 2003 codification of statutes involving health care liability claims, but before the 2005 amendment. The 2005 amendment, which provides that an expert report be served not later than 120 days after the *original petition* is filed, was intended to clarify that the deadline for filing expert reports is now triggered by the filing of an original petition. *Steele*, 274 S.W.3d at 50. Therefore, these cases are legally and factually distinguishable from the case at hand because Cartrite's claims fall under the current version of section 74.351(a).

Considering that section 74.351(a) was amended in 2005, Cartrite's cause of action accrued after that amendment, and our ultimate disposition of Daybreak's second issue, we deem it unnecessary to address the parties' arguments relating to pre-suit service. *See* Tex. R. App. P. 47.1. Accordingly, we express no opinion as to whether or not section 74.351(a) creates a window within which an expert report must be served,

11

or whether it establishes a deadline before which that report must be served. Issue one is pretermitted.

**II. The 120 Day Deadline**

By issue two, Daybreak contends that Cartrite is incorrect in arguing that the amended petition naming Daybreak Community Services, Inc. as a defendant provided Cartrite with a new 120 day deadline. We disagree with Daybreak's contention.

When considering the provisions of section 74.351(a) requiring that an expert report be served not later than 120 days after the filing date of the *original petition*, an interpretation of that provision as applying exclusively to the first pleading filed by a claimant, regardless of whom that pleading alleges a health care liability claim against, "runs into a number of interpretational and logical problems." *See Hayes v. Carroll*, No. 03-08-00217-CV, 2010 Tex.App. LEXIS 3637, at *8-9 (Tex.App.--Austin May 14, 2010, no pet. h.). Referencing the House and Senate Bill analyses,[12] the Austin Court of Appeals first noted that the primary purpose of the amendment was to clarify that the 120 day deadline did not run from the date of the statutory notice letter. *Id.* at *10. The court then noted that the intent of the statute creating the 120 day deadline was to have that deadline *triggered by the filing of the lawsuit.*" (Emphasis added). The filing of the lawsuit was the demarcation event triggering the 120 day deadline. *Id.* "If a defendant has not been added to a case, there has yet to be a lawsuit filed against that defendant." *Id.* at *10-11. Regardless of how an amended pleading is styled, it is the original or first petition bringing a lawsuit as to that defendant that triggers the 120 day

---

[12]House Comm. on Civil Practices, Tex. H.B. 2645, 78th Leg., R.S. (2005) and Sen. Comm. on State Affairs, Tex. H.B. 2645, 78th Leg., R.S. (2005).

deadline for filing an expert report for purposes of a health care liability claim. *Id.* at *11. A construction of section 74.351(a) that interprets the term "original petition" as being the first document filed in a case that brings a claim against a particular defendant is consistent with the available legislative history on the issue. *Id.*

Interpreting the term "original petition" as referring only to the first petition filed in a cause number regardless of who is named as a defendant presents a quandary. If the 120 day deadline begins from the first petition filed, a plaintiff could never add another physician or health care provider as a defendant beyond 120 days because the plaintiff would never be able to timely serve an expert report as to that defendant. *Id.* at *11-12. Such an interpretation would produce an absurd result which runs afoul of statutory interpretation. *See Entergy Gulf States*, *Inc.*, 282 S.W.3d at 437. It would also create the potential for unreasonable or unjust results. *Hayes*, 2010 Tex.App. LEXIS 3637, at *12. The court in *Hayes* added that it is not the title of the pleading that is dispositive; rather, it is the substance of the petition with respect to the health care providers who are named as defendants that is dispositive. *Id.* at *13-14.

The Corpus Christi Court of Appeals, Houston First Court of Appeals, and San Antonio Court of Appeals have all addressed this issue and have also concluded that the first-filed petition naming a particular defendant physician or health care provider as a party to the lawsuit triggers the 120 day deadline for filing an expert report as to that party. *See Padre Behavioral Health Sys.*, *LLC*, 310 S.W.3d at 85; *Stroud*, 2010 Tex.App. LEXIS 3675, at *12; *Osonma*, 2009 Tex.App. LEXIS 4959, at *4. The Corpus Christi Court of Appeals in *Padre Behavioral Health Sys.*, *LLC*, drew from the reasoning in *Osonma.* 310 S.W.3d at 84-85.

In *Osonma*, certain defendants in a health care liability case were not joined as parties until plaintiff filed her third amended petition, well after 120 days from the filing of the original petition. Defendants filed motions to dismiss based in part on untimely service of expert reports. The trial court denied the motions to dismiss. In affirming the trial court's decision, the San Antonio Court of Appeals examined the legislative history and concluded that the Legislature intended the substitution of "original petition" for "claim" in 2005 to mean that the deadline for serving an expert report be triggered by the filing of the lawsuit against the defendant entitled to the statutory notice. The court also recognized that limiting "original petition" to the first-filed petition in the cause would lead to an absurd result. *Osonma*, 2009 Tex.App. LEXIS 4959, at *4-5. In *Stroud*, the Houston First Court of Appeals held that the 120 day deadline was triggered when the claimant first asserts a health care liability claim against a particular defendant in a petition. 2010 Tex.App. LEXIS 3675, at *13.

The Dallas Court of Appeals, in *Steele*, 274 S.W.3d at 50, and the Houston Fourteenth Court of Appeals in *Maxwell v. Seifert*, 237 S.W.3d 423, 426 (Tex.App.--Houston [14th Dist.] 2008, pet. denied), have strictly interpreted the phrase "not later than the 120th day after the date the 'original petition' was filed" as relating to the first petition filed. However, *Steele* and *Maxwell* are distinguishable because they both involve the addition of new claims and service of expert reports regarding those claims in amended petitions against pre-existing defendants rather than the service of an expert report on a newly added party.

In the case before us, the original petition was filed against Daybreak Group, Ltd. Co. on April 15, 2008. Daybreak argues that service of Cartrite's expert report was

14

therefore due no later than August 13, 2008, 120 days after filing the original petition. However, as Daybreak and Daybreak Group have both argued, they are separate and distinguishable entities, with Daybreak Group merely providing Daybreak with "financial, accounting, payroll and administrative support services." As such, Daybreak Group is not a health care provider. When Cartrite filed her first amended petition on July 6, 2009, alleging health care liability claims for the first time against Daybreak Community Services, Inc., a health care provider, she was entitled to have 120 days from the filing of that petition in which to serve Nurse Foster's expert report and curriculum vitae. Three days later, on July 9, 2009, Cartrite properly served Daybreak Community Services, Inc. with a copy of Nurse Foster's expert report and curriculum vitae.[13] Because Daybreak Community Services, Inc. was served within 120 days of the first-filed petition naming it as a defendant, we conclude the trial court did not abuse its discretion in denying Daybreak's motion to dismiss based on an untimely expert report. In reaching our conclusion, we follow the rationale and logic of the decisions from our sister courts in Austin, Corpus Christi, the First District of Houston, and San Antonio. Issue two is overruled.

We note that Daybreak further contends that Cartrite's position that Daybreak Community Services, Inc. was not sued until her first amended petition was filed on July 6, 2009, time bars her claim. *See* § 74.251(a). At this juncture, that argument is premature and not before this Court. Daybreak has never sought summary judgment based upon a statute of limitations defense and the merits of that claim are still subject to full adjudication before the trial court.

---

[13]We express no opinion as to the sufficiency of the expert report.

## Conclusion

Accordingly, the trial court's order denying the Motion to Dismiss filed by Daybreak Community Services, Inc. is affirmed.


Patrick A. Pirtle
Justice