

In The

# Court of Appeals
## Seventh District of Texas at Amarillo

_____

No. 07-13-00181-CV

_____

COVENANT HEALTH SYSTEM, REBECCA FANT, F.N.P., AND
TURLAPATI R. RAO, M.D., APPELLANTS

V.

MARCY MCMILLAN, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE
OF MARCNELLUS HARRIS, BROOKSEY PATTERSON, ARGETTE WATSON, VANCE
E. HARRIS, MICHAEL HARRIS, AND MARY SKORNA, APPELLEES

On Appeal from the 237th District Court
Lubbock County, Texas
Trial Court No. 2012-503,206; Honorable Les Hatch, Presiding

October 7, 2014

## OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Following surgery based on a diagnosis of a perforated or ruptured appendix, the medical condition of Ms. Marcnellus Harris deteriorated to the point that she suffered cardiopulmonary arrest, ultimately resulting in her death. Her survivors, Marcy McMillan, individually and as representative of the Estate of Ms. Harris, Brooksey

Patterson, Argette Watson, Vance E. Harris, Michael Harris, and Mary Skorna (collectively referred to as McMillan) filed a health care liability suit against, John P. Thomas, M.D.,[1] Turlapati R. Rao, M.D., Rebecca Fant, F.N.P. and Covenant Health System d/b/a Covenant Women's and Children's Hospital, based on allegations of negligent care.[2]

Pursuant to the Texas Medical Liability Act,[3] McMillan offered the expert report of Moses J. Fallas, M.D., dated June 11, 2012, and the expert report of Claudia Estrada, R.N., dated June 8, 2012. Dr. Rao, Nurse Fant and Covenant Health System (collectively referred to as Appellants) each filed objections to the sufficiency of Dr. Fallas's report and moved to dismiss the claims filed against them pursuant to section 74.351(b). The trial court sustained those objections, in part, but allowed McMillan a thirty-day extension to cure the alleged deficiencies.[4] McMillan filed a supplemental expert report prepared by Dr. Fallas, dated February 25, 2013, and again, Appellants objected to the sufficiency of the reports and moved to dismiss the claims filed against them. On May 13, 2013, the trial court overruled Appellants' objections and denied their respective motions to dismiss. In this interlocutory appeal, Appellants' sole complaint is

---

[1] Surgery was performed on Ms. Harris by Dr. Thomas. The claims against Dr. Thomas were non-suited on November 28, 2012, and he is not a party to this appeal.

[2] By amended petition, McMillan added Belinda Washington as a plaintiff. Appellants amended their answer to allege Washington's claims were barred by limitations. Belinda Washington is not a party to this appeal.

[3] TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.001-.507 (West 2011 and Supp. 2014). The current version of the Texas Medical Liability Act applies to suits filed on or after September 1, 2013. Act of May 24, 2013, 83rd Leg., R.S., ch. 870, § 3(b), 2013 Tex. Gen. Laws 2217. Because this suit was filed before September 1, 2013, the former version of the statute applies to the instant appeal. *See* Act of May 18, 2005, 79th Leg., R.S., ch. 635, 2005 Tex. Gen Laws 1590. Accordingly, all references to "§" or "section" are references to the former version of the Texas Civil Practice and Remedies Code.

[4] Section 74.351(c) provides for a thirty-day extension to cure deficiencies in an expert report.

that the medical expert reports are still deficient and that the trial court erred in denying their respective motions to dismiss. Finding the expert reports in question constitute an objective good faith effort to comply with the requirements of section 74.351, we affirm.

FACTUAL BACKGROUND

On May 17, 2010, Ms. Harris presented herself to the emergency department of Covenant Health System complaining of abdominal pain, nausea and vomiting. A CT scan[5] led to a diagnosis of a ruptured appendix, and she was admitted to the hospital for surgery. She underwent laparoscopic drainage of an appendiceal abscess and placement of a Jackson-Pratt drain.[6] Following surgery, Ms. Harris was treated for pain and was suffering from a fever and tachycardia.[7] Two days after surgery, her oxygen saturation levels began to decline, and oxygen was increased to maintain a satisfactory level. The nursing staff documented a tender abdomen, issues with the Jackson-Pratt drain and hypoactive bowel sounds. They notified her surgeon, Dr. Thomas, of these symptoms.

Three days after surgery, Ms. Harris continued to complain of abdominal pain and the following day, due to her decreasing oxygen saturation levels, her oxygen intake was again increased. By May 22, 2010, her hematocrit level[8] had dropped to

---

[5] A CT scan, or Computed Tomography Scan, is a form of x-ray that uses computers to generate a detailed three-dimensional image of the inside of a body. It provides views of the body's soft tissues such as blood vessels, muscles and organs.

[6] A Jackson-Pratt drain is a closed suction medical device commonly used as a post-operative drain for collecting bodily fluids from surgical sites to prevent fluid build-up.

[7] Tachycardia is a very rapid heart rate.

[8] Hematocrit is the volume by percentage of red blood cells in the blood. Red blood cells are the primary means of delivering oxygen to body tissues through the process of blood flow through the circulatory system. The normal hematocrit level for women is approximately forty percent.

twenty-six percent, and at 7:03 a.m., Dr. Thomas verbally ordered a transfusion of two units of packed red blood cells. He also directed that 500 ml of albumin be administered by IV while waiting for the transfusion. At 10:45 a.m., Nurse Fant[9] saw Ms. Harris and noted tachycardia and tachypnea.[10] At that time, the transfusion of red blood cells had not yet been given. The albumin was not administered until 11:05 a.m. At 11:20 a.m., Dr. Rao, who was covering for Dr. Thomas and had no prior history with Ms. Harris, also noted tachycardia and tachypnea. Without first stabilizing her condition, Dr. Rao ordered a new CT scan and additional blood work. He also ordered that she be transferred ICU. Ms. Harris never received the blood transfusion. She had an electrocardiogram that indicated she was in sinus tachycardia with a heart rate of 124 beats per minute. An oxygen mask was applied and she was taken to radiology for the CT scan. Ten minutes after being transferred to the radiology department from the medical surgical unit, Ms. Harris suffered cardiopulmonary arrest. A full resuscitation effort was initiated; however, she was pronounced dead at 1:05 p.m.

PROCEDURAL BACKGROUND

On July 26, 2012, McMillan filed suit for negligence and gross negligence in the treatment of Ms. Harris by Dr. Thomas, Dr. Rao, Nurse Fant, and Covenant Health System. By her amended petition, McMillan alleged Appellants breached the standard of care as follows:

---

[9] According to the record, Nurse Fant works for Dr. Thomas and is not a hospital employee.

[10] Tachypnea is the condition of rapid breathing.

4

- failing to perform an adequate history and physical examination;

- failing to correctly diagnose the cause of abdominal pain or its severity;

- failing to prescribe appropriate treatment for the abdominal pain;

- failing to arrange for appropriate follow-up care; and

- failing to adequately observe, diagnose and treat Ms. Harris while in their care.

McMillan further alleged the breaches proximately caused Ms. Harris's death and that Covenant Health System was vicariously liable for the negligent acts or omissions of its staff under the doctrine of *respondeat superior*.

On October 19, 2012, pursuant to section 74.351, McMillan served the expert reports from Dr. Fallas, a general surgeon, and Claudia Estrada, R.N., on Appellants. As relevant to this appeal, Covenant objected to Dr. Fallas's report on the ground it contained conclusory statements regarding the causal relationship between the alleged breach of the standard of care and the damages claimed. Dr. Rao's objection echoed Covenant's objection—failure to identify any breach in the standard of care by him and the conclusory statements concerning damages claimed. Nurse Fant also objected to Dr. Fallas's report on the ground it did not identify the causal connection between any alleged breach in the standard of care applicable to her and the damages claimed.[11] All of the Appellants' objections were timely. The trial court sustained Appellants' objections that Dr. Fallas's expert report contained global and conclusory statements concerning the causal relationship between the standard of care and Ms. Harris's death.

---

[11] Fant also filed objections to Nurse Estrada's expert report but there is no issue on appeal regarding her report.

In ruling on Appellants' objections, the trial court granted McMillan's motion for an extension of time to file a supplemental expert report prepared by Dr. Fallas. After the supplemental expert report was timely filed, Appellants again filed objections and motions to dismiss. This second round of objections echoed the first, and Covenant added that Dr. Fallas failed to describe how treatment options would have changed the outcome. Dr. Rao added that the supplemental expert report failed to identify the causal link between any breach in the standard of care by him and the injury claimed. Nurse Fant added that any alleged breach of the standard of care by her was conclusory. Following a hearing on Appellants' objections and motions to dismiss, by separate orders dated May 13, 2013, the trial court overruled Appellants' objections and denied their motions to dismiss. Appellants timely filed their notices of an interlocutory appeal.

By a joint brief, Dr. Rao and Nurse Fant assert the trial court abused its discretion in denying their motions to dismiss because the expert reports fail to explain with sufficient detail how their alleged acts of negligence proximately caused Ms. Harris's cardiopulmonary arrest and death. Dr. Rao and Nurse Fant further argue that this Court's review of the expert reports should be limited to the four corners of those documents without resorting to speculation and impermissible inferences.

Covenant asserts the trial court abused its discretion in overruling its objections to the expert reports of Dr. Fallas and erred in denying its motion to dismiss because, limited to the four corners of the documents, the reports were impermissibly speculative and conclusory in describing the causal relationship between the alleged breach of the standard of care by Covenant and the death of Ms. Harris.

STANDARD OF REVIEW

A trial court's decision on a motion to dismiss under section 74.351 is reviewed for abuse of discretion. *Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006); *Am. Transitional Care Ctrs. of Tex.*, *Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001); *Daybreak Cmty. Servs. v. Cartrite*, 320 S.W.3d 865, 869 (Tex. App.—Amarillo 2010, no pet.). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007).

EXPERT REPORTS UNDER TEXAS MEDICAL LIABILITY ACT

The Texas Medical Liability Act requires a claimant asserting a health care liability claim to timely serve one or more expert reports addressing the conduct of each health care provider against whom a claim has been asserted. § 74.351(a). If a sufficient expert report is not filed within the requisite period specified, section 74.351(b) mandates the court enter an order dismissing that claim, with prejudice. As to the sufficiency of the report, section 74.351(l) provides a trial court "shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report . . . ." To qualify as an objective good faith effort the report must (1) inform the defendant of the specific conduct the claimant questions, and (2) provide a basis for the trial court to conclude there is a meritorious claim. *Loaisiga v. Cerda*, 379 S.W.3d 248, 260 (Tex. 2012); *Scoresby v. Santillan*, 346 S.W.3d 546, 556 (Tex. 2011) (citing *Palacios,* 46 S.W.3d at 879).

7

An "expert report" is defined as a written report by an expert that provides a fair summary of the expert's opinions regarding (1) the applicable standards of care, (2) the manner in which the care rendered by the physician or health care provider fails to meet those standards and (3) the causal relationship between that failure and the injury, harm or damages claimed. *See* § 74.351(r)(6); *see also TTHR Ltd. P'ship v. Moreno*, 401 S.W.3d 41, 44 (Tex. 2013) (citing *Palacios*, 46 S.W.3d at 879); *Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 630 (Tex. 2013). The expert report must not be conclusory in its explanation of causation and it must explain the basis for the expert's causation opinions by linking the expert's conclusions to the facts. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *Palacios*, 46 S.W.3d at 879; *Wells v. Ashmore,* 202 S.W.3d 465, 467 (Tex. App.—Amarillo 2006, no pet.). The report need not present evidence as if the plaintiff was actually litigating the merits, *Palacios*, 46 S.W.3d at 879, and there are no magic words required to establish causation. *Bowie Mem'l Hosp.*, 79 S.W.3d at 53. "[A] report that satisfies these requirements, even if as to one theory only; entitle[s] the claimant to proceed with a suit against the physician or health care provider." *Potts*, 392 S.W.3d at 630.

### ANALYSIS

We address Appellants' issues simultaneously as the arguments presented are similar; Appellants contend the trial court abused its discretion in denying their motions to dismiss because the expert reports did not establish the causal relationship between the alleged breach of the standard of care and the death of Ms. Harris. Covenant adds abuse of discretion by the trial court in overruling its objections to Dr. Fallas's reports.

Appellants contend Dr. Fallas's expert reports fail to explain the basis for his causation opinions and do not adequately explain how the alleged breaches in the standard of care proximately caused Ms. Harris's death. Because Appellants' do not challenge the qualifications of Dr. Fallas, nor do they question the applicable standard of care or the breach of that standard, our analysis will focus on the basis of his opinion concerning causation.

BREACH OF STANDARD OF CARE BY DR. RAO

As to Dr. Rao, Dr. Fallas's initial report provides as follows:

Dr. Rao deviated from the standard of care by failing to see to Marcnellus Harris's transfer to ICU personally, considering the severity of her hemodynamic instability. Dr. Rao should have taken immediate steps to stabilize her blood pressure and oxygen saturation. Further allowing the patient to be taken to the CT scanner while in her critical condition was a breach of the standard of care. Stabilization should have been Dr. Rao's first priority.

Additionally, his supplemental report opined as follows:

[Dr. Rao] should have ensured that Ms. Harris received the packed red blood cells first ordered by Dr. Thomas . . . . Dr. Rao could also have ordered the patient transferred immediately to the ICU, where stat administration of packed red blood cells, in reasonable probability, would have occurred.

BREACH OF THE STANDARD OF CARE BY NURSE FANT

As to Nurse Fant, Dr. Fallas's initial report provides the following:

Nurse Fant . . . deviated from the standard of care by failing to inform Dr. Thomas or Dr. Rao that the packed red blood cells ordered for the patient had not been given at the time she saw the patient and were still not given almost 4 hours after the order. She should also have communicated the patient's continued tachycardia and tachypnea . . . . She also breached the standard of care in that she did not contact the blood bank to learn the reason for the delay or order the blood delivered and transfused stat.

9

Additionally, Dr. Fallas's supplemental report opined as follows:

Nurse Fant never questioned why the packed red blood cells ordered by Dr. Thomas had never been given.

BREACH OF THE STANDARD OF CARE BY COVENANT HEALTH SYSTEM

And, as to Covenant Health System, Dr. Fallas's initial report states:

[T]he nurse taking care of the patient breached the standard of care by failing to question the decision to send the patient for CT scan and allowing the patient to be taken anywhere but the ICU.

The supplemental expert report further states:

Ms. Harris should not have been allowed to be taken for a CT scan on the morning of May 22, 2010 . . . .  Had the Covenant nursing staff notified appropriate physicians of [her] condition, it is likely those physicians would have sent her to ICU, where—as noted above—she would likely have received stat administration of packed red blood cells and efforts at stabilization . . . .

CAUSATION

Furthermore, concerning causation, Dr. Fallas's reports state:

When blood pressure drops significantly and oxygen saturation is low, perfusion of oxygen to vital organs becomes compromised, and those organs are starved for oxygen.  Without adequate oxygenation, vital tissues die.  In reasonable probability, this is what occurred in the case of Ms. Harris.  Oxygen starvation led to tissue death and cardiopulmonary arrest.  That cardiopulmonary arrest ultimately resulted in her death.

Had Dr. Rao transferred Ms. Harris to the intensive care unit for stabilization . . . she would have survived this incident.

In addition, had the nursing staff of Covenant Health System ensured that [Ms. Harris] received the packed red blood cells ordered by Dr. Thomas— even after the one-hour window that constitutes the standard of care—it is likely that she would have had a better outcome.

[A]ction to increase her hematocrit level and her hemodynamic stability would have made a difference.

Both [Dr. Rao and the nursing staff] should have ensured that Ms. Harris received the packed red blood cells first ordered by Dr. Thomas . . . this would have saved her life.

10

> Had the Covenant nursing staff [seen to it that Ms. Harris] received stat administration of packed red blood cells and efforts at stabilization . . . she would, in reasonable probability, have survived this incident, despite the earlier breaches of the standard of care.

From *Palacios, Bowie,* and like opinions, we have learned that an expert report must contain more than mere conclusions. *Bowie,* 79 S.W.3d at 52; *Palacios,* 46 S.W.3d at 873. For instance, in *Bowie,* the expert "simply opine[d] that that [the claimant] might have had 'the possibility of a better outcome' without *explaining* how Bowie's conduct caused injury . . . . " *Bowie,* 79 S.W.3d at 53 (emphasis added). The Supreme Court found the expert report to be deficient because it "lack[ed] information linking the expert's conclusion . . . to Bowie's alleged breach . . . ." *Id.* Therefore, in order to be sufficient, an expert report must include more than a mere statement that a purported breach of an applicable standard of care caused a particular outcome. Within the four corners of the document, an expert report must include information explaining the link between the standard of care, its breach and the ensuing injury.

Here, a fair reading of the initial and supplemental expert reports of Dr. Fallas shows more than the mere statement of his conclusions. It traces the epidemiological basis for his causation opinions by linking specific breaches of the applicable standard of care to the ultimate injury. Specifically, it opines that Ms. Harris suffered an injury, death, as the result of cardiopulmonary arrest, which resulted from tissue death, which resulted from oxygen starvation, which resulted from low oxygen saturation levels, which resulted from her failure to receive packed red blood cells, which resulted from the various breaches of the standards of care owed Ms. Harris by Dr. Rao, Nurse Fant and Covenant Health System. More specifically, according to Dr. Fallas's opinion, the

11

failure of each Appellant to see to it that Ms. Harris received packed red blood cells in a timely fashion, in accordance with their respective standards of care, was a direct and proximate cause of the oxygen starvation ultimately resulting in her death. In doing so, Dr. Fallas specifically concluded that an earlier and timely transfusion of red blood cells and stabilization of Ms. Harris's condition would have saved her life and that the breach of the standard of care by each Appellant contributed to the failure to see to it that this procedure was done. Keeping in mind that an expert report satisfies the requirements of the Medical Liability Act if it establishes a sufficient causal relationship as to a single theory of negligence, we conclude Dr. Fallas's initial and supplemental reports, when read together, meet the requirements of section 74.351 because they affirmatively link an act of negligence by each Appellant to an injury sustained by Ms. Harris. *See Potts*, 392 S.W.3d at 630.

Furthermore, in conducting an abuse of discretion analysis concerning matters committed to the trial court's discretion, this Court may not substitute its judgment for that of the trial court. *See Walker v. Packer,* 827 S.W.2d 833, 839 (Tex. 1992). Rather, we should show great deference to the trial court's determination that the expert reports in question did constitute an objective good faith effort to comply with the requirements of section 74.351. *Id.* Even if we might have decided the issue differently, we cannot disturb the trial court's decision unless it is shown to be an abuse of discretion. *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex. 1985). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles, or, alternatively, whether the trial court's actions were arbitrary and unreasonable based on the circumstances of the individual case. *Downer v.*

12

*Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).  Giving appropriate deference to the decision of the trial court, we cannot say the decision to overrule Covenant Health System's objections to the expert reports and to deny the motions to dismiss filed by Covenant, Dr. Rao and Nurse Fant were made in an arbitrary or unreasonable manner, without reference to any guiding rules or principles, amounting to an abuse of discretion.  Accordingly, Appellants' issues are overruled.

CONCLUSION

The medical expert reports in question inform the Appellants of specific conduct claimed to be negligent and provide a reasonable basis for the trial court to conclude those claims have merit.  Accordingly, the trial court's decision to deny the Appellants' motions to dismiss pursuant to section 74.351(b) is affirmed.

Patrick A. Pirtle
Justice

Quinn, C.J., concurring in the result.