*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*


★ ★ ★ ★ ★ ★ ★



## OPINION

No. 04-11-00160-CV

**SOUTHWEST GENERAL HOSPITAL, L.P.**, and IASIS Healthcare Holdings, Inc.,
Appellants

v.

Pamela **GOMEZ**,
Appellee

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2010-CI-09673
Honorable Barbara Hanson Nellermoe, Judge Presiding

Opinion by:  Karen Angelini, Justice

Sitting:  Catherine Stone, Chief Justice
Karen Angelini, Justice
Phylis J. Speedlin, Justice

Delivered and Filed:  October 19, 2011

AFFIRMED

Southwest General Hospital, L.P. and IASIS Healthcare Holdings, Inc. appeal the trial court's denial of their motion to dismiss under Section 74.351(b) of the Texas Civil Practice and Remedies Code. We affirm the trial court's order.

### BACKGROUND

According to Pamela Gomez's original petition, on March 5, 2008, she was seen by Dr. Paresh Rajajoshiwala at Bridges Center for Surgical Weight Loss, which is located within

Southwest General Hospital, and was diagnosed with a ventral hernia. On April 1, 2008, at Southwest General Hospital, Gomez underwent a laparoscopic repair of an incarcerated ventral hernia. The surgery was performed on an outpatient basis by Dr. Rajajoshiwala. Gomez alleges that after the surgery, she became increasingly ill and, on April 4, 2008, went to the emergency room of Southwest General, complaining of fever and abdominal pain. She was treated by Dr. Vernon F. Williams in the emergency room. Gomez alleges that while she was in the emergency room, Dr. Rajajoshiwala was informed of her test results and gave instructions "to start antibiotics and he would see the patient next week." Gomez was prescribed antibiotics and discharged from the emergency department by Dr. Williams with a diagnosis of "fever." After returning home, Gomez became more ill. When she returned to the emergency room at Methodist Metropolitan Hospital, she was admitted for emergency surgery. During the surgery, it was discovered that her bowel had been lacerated during the laparoscopic ventral hernia repair surgery that had been performed by Dr. Rajajoshiwala on April 1, 2008. It was also discovered that she was still suffering from the hernia that Dr. Rajajoshiwala had attempted to repair.

Thus, on June 10, 2010, Gomez filed a medical malpractice lawsuit against Dr. Rajajoshiwala, Dr. Williams, Southwest General Hospital, L.P. d/b/a Southwest General Hospital, IASIS Healthcare Holdings, Inc. d/b/a Southwest General Hospital, and Bridges Center for Surgical Weight Loss. She timely served an expert report on all defendants. The expert report described the negligent conduct of Dr. Rajajoshiwala and Dr. Williams. The report, however, did not mention any negligent conduct committed by Southwest General Hospital or IASIS Healthcare Holdings ("the Hospital Defendants"). Thus, because the expert report did not indicate any negligent conduct on their behalf, on November 15, 2010, pursuant to Section 74.351(b), the Hospital Defendants moved to dismiss Gomez's claims against them for failure to

provide an expert report. On November 29, 2010, Gomez filed a first amended original petition, which included allegations of ostensible agency. On January 4, 2011, Gomez filed a second amended petition, which included allegations of ostensible agency, actual agency, joint enterprise, and joint venture. On January 6, 2011, the trial court denied the Hospital Defendants' motion to dismiss. The Hospital Defendants then filed this interlocutory appeal.

## DISCUSSION

We review a trial court's ruling on a motion to dismiss under Section 74.351(b) for an abuse of discretion. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877-78 (Tex. 2001); *Pedroza v. Toscano*, 293 S.W.3d 665, 666 (Tex. App.—San Antonio 2009, no pet.). A trial court abuses its discretion when it "reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *In re Bass*, 113 S.W.3d 735, 738 (Tex. 2003). Under this standard of review, we may not substitute our judgment for the trial court's judgment. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). Nor can we determine that the trial court abused its discretion merely because we would have decided the matter differently. *Samlowski v. Wooten*, 332 S.W.3d 404, 410 (Tex. 2011).

Section 74.351 requires a plaintiff, within 120 days of filing suit, to serve expert reports for each physician or health care provider against whom a liability claim is asserted. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West 2011). When a report is not served within 120 days after suit is filed, the defendant may file a motion to dismiss the claim against it, and the trial court has no discretion but to dismiss. *Id.* § 74.351(b). To be sufficient under section 74.351, an expert report does not always, however, have to name the heath care provider. The supreme court explained in *Gardner v. U.S. Imaging, Inc.*, 274 S.W.3d 669, 671-72 (Tex. 2008), that "[w]hen a party's alleged health care liability is purely vicarious, a report that adequately implicates the

actions of that party's agents or employees is sufficient." In response to the motion to dismiss, Gomez argued that her expert report was sufficient pursuant to *Gardner* because the Hospital Defendants were alleged to be vicariously liable for Dr. Rajajoshiwala's actions. On appeal, the Hospital Defendants argue that there were no allegations of vicarious liability in Gomez's original petition to support the application of *Gardner* and that the allegation of ostensible agency added to her first amended petition was untimely because the first amended petition was filed after the expert report's 120-day deadline.

An original petition must contain a short statement of the cause of action sufficient to give fair notice of the claim involved. TEX. R. CIV. P. 47. The plaintiff's petition must also provide information sufficient to enable the defendant to prepare a defense. TEX. R. CIV. P. 45, 47; *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 812 (Tex. 1983). The test for determining if a petition provides fair notice is whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000). We construe petitions liberally and in favor of the drafter if no special exceptions have been sustained to that petition. *Id.* at 897; *Presiado v. Sheffield*, 230 S.W.3d 272, 275 (Tex. App.—Beaumont 2007, no pet.).

Gomez's original petition sufficiently placed the Hospital Defendants on notice that they were alleged to be vicariously liable for Dr. Rajajoshiwala's actions. In explaining the relationships among the parties, the original petition alleged that Bridges Center for Surgical Weight Loss ("the Center") was owned, operated, and managed by the Hospital Defendants; that the Center operated on the premises of Southwest General; and that the Hospital Defendants advertised the Center directly under the auspices of Southwest General. The original petition also alleged that Dr. Rajajoshiwala was a medical doctor practicing general surgery and bariatric

medicine who worked "directly with, by and through the Defendant, Bridges Center for Surgical Weight Loss, and acts as its Medical Director." The petition further alleged that Dr. Rajajoshiwala had a direct financial relationship with the Hospital Defendants.

The original petition then alleged that on April 1, 2008, at Southwest General, Gomez underwent a laparoscopic repair of an incarcerated ventral hernia performed by Dr. Rajajoshiwala, who was "[a]t the time of the surgery . . . practicing *under the auspices* of the Defendant, Bridges Center for Surgical Weight Loss." (emphasis added). The petition then described the complications surrounding Gomez's surgery and in a section titled "Negligence and Proximate Cause," alleged that throughout Gomez's care and treatment from April 1, 2008, to April 7, 2008, "*all Defendants herein, by and through their interrelationships as described herein above*, provided negligent and grossly substandard care" to Gomez, which caused serious and life-threatening injuries. (emphasis added). The petition alleged that "the Defendants" were negligent in (1) lacerating Gomez's colon during the performance of the laparoscopic ventral hernia repair; (2) failing to properly diagnose the cause of her "fever" on April 4, 2008; (3) failing to respond with necessary expediency to her obviously serious condition during her emergency department admission on April 4, 2008; (4) failing to heed the findings of the CBC and comprehensive metabolic panel performed on April 4, 2008, particularly in comparison to the results of the April 1, 2008, laboratory tests; (5) failing to perform radiological studies on April 4, 2008; (6) failing to include a bowel injury in the differential diagnosis on April 4, 2008; (7) failing to admit Gomez as an inpatient on April 4, 2008; (8) failing to diligently monitor Gomez after her discharge from the emergency department on April 4, 2008; and (9) failing to recognize and consider that a bowel injury is a well-known, most common complication of laparoscopic abdominal surgical procedures. Gomez then alleged that "the negligence on the part

of the Defendants, individually, in concert and by and through their agents, servants and/or employees as outlined above, both of omission and commission, singularly and collectively, were a direct and proximate cause of the occurrence in question and the injuries and damages sustained by" Gomez.

The above language describes the interrelationships of the parties: Dr. Rajajoshiwala practices general surgery and bariatric medicine and works directly "with, by and through" the Center. In turn, the Hospital Defendants owned, operated, and managed the Center. They also had a direct financial relationship with Dr. Rajajoshiwala. Gomez was first seen by Dr. Rajajoshiwala at the Center, and her surgery was performed at Southwest General. At the time of the surgery, Dr. Rajajoshiwala was practicing *under the auspices* of the Center, which is in turn owned, operated, and managed by the Hospital Defendants. Then Gomez alleged that all the defendants, *by and through their interrelationships as described herein above*, provided negligent and grossly substandard care. Thus, the original petition sufficiently provided fair notice that the Hospital Defendants could be vicariously liable for Dr. Rajajoshiwala's conduct.[1]

Moreover, after the Hospital Defendants filed their motion to dismiss for failure to provide an expert report but before the hearing on the motion to dismiss, Gomez amended her petition to clarify her allegations and included a section on ostensible agency, claiming that the Hospital Defendants had created an ostensible agency relationship between Dr. Rajajoshiwala and Southwest General Hospital "with respect to Gomez's medical care received by and through" the Center. Although the Hospital Defendants claim that this amended petition cannot be considered in determining whether Gomez pled vicarious liability because it was filed after

---

[1] We note that the Hospital Defendants argue that such allegations could also be consistent with Dr. Rajajoshiwala being an independent contractor who works with the Hospital Defendants. Nevertheless, if the Hospital Defendants were unclear as to the allegations, they could have filed special exceptions to the petition. Indeed, after the Hospital Defendants filed their motion to dismiss for failure to provide an expert report, Gomez filed an amended petition to clarify the vicarious liability issue.

section 74.351's deadline for filing an expert report, we note that nothing in section 74.351 prevents a plaintiff from amending her petition to clarify theories of liability after the expert report deadline. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (West 2011).[2] Further, because Gomez filed her amended petition on November 29, 2010, more than a month before the hearing was held on the Hospital Defendants' motion to dismiss, the Hospital Defendants had ample opportunity to assert any objections to the expert report based on Gomez's vicarious liability claim of ostensible agency. *See Dingler v. Tucker*, 301 S.W.3d 761, 768-69 (Tex. App.—Fort Worth 2009, pet. denied) (holding that the trial court abused its discretion in dismissing the plaintiff's vicarious liability claims against the medical clinic because when the plaintiff amended his petition to specifically allege vicarious liability before the motion to dismiss was decided, the issue was properly pleaded).

The Hospital Defendants also argue that even if Gomez properly pled vicarious liability claims against them, we should still order that her claims be dismissed because the *Gardner* exception should not apply. The supreme court in *Gardner*, 274 S.W.3d at 671-72, stated that "[w]hen a party's alleged health care liability is purely vicarious, a report that adequately implicates the actions of that party's agents or employees is sufficient." Emphasizing that the allegations of vicarious liability in *Gardner* were based on respondeat superior, the Hospital Defendants argue that the supreme court "has not elaborated on what other theories of vicarious liability it might consider 'purely vicarious' beyond respondeat superior liability." Thus, the Hospital Defendants argue that under *Gardner*, "purely vicarious" claims are limited to

---

[2] We note that the Hospital Defendants cite *Methodist Charlton Medical Center v. Steele*, 274 S.W.3d 47, 50 (Tex. App.—Dallas 2008, pet. denied), for the proposition that "Gomez cannot assert entirely new theories of liability that are not supported by a report more than 120 days after the original petition is filed." However, *Steele* is distinguishable from the present case. In *Steele*, the plaintiff amended her petition to include new *claims* against the defendant and *never served an expert report regarding those claims on the defendants. Steele*, 274 S.W.3d at 50. The court noted that the policy behind section 74.351 would be undermined if "a party had only to wait more than 120 days after filing their petition, amend the petition adding new claims, and then avoid having to serve an expert report regarding the amended claims." *Id.* Those facts are not presented here.

respondeat superior liability claims and cannot include vicarious liability theories like ostensible agency, and the theories of vicarious liability later added by Gomez in her second amended petition: actual agency, joint venture, and joint enterprise. However, it is apparent that when the supreme court made the statement, "when a party's alleged health care liability is purely vicarious," it was not limiting its holding to respondeat superior, but was instead making a distinction between vicarious liability and direct liability. Thus, we decline to interpret *Gardner* as being limited to vicarious liability claims brought under respondeat superior.[3]

The Hospital Defendants also argue that the trial court erred in not dismissing Gomez's direct negligence claims against it because Gomez did not serve a report regarding these direct negligence claims. However, Gomez stated in the trial court and has maintained on appeal that she has not asserted any direct negligence claims against the Hospital Defendants. Thus, she has conceded that her current pleadings do not support any such direct negligence claims against the Hospital Defendants. *See Obstetrical & Gynecological Assocs. v. McCoy*, 283 S.W.3d 96, 107-08 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). And, if she is not bringing any direct negligence claims against the Hospital Defendants, the trial court did not err in failing to dismiss such claims.

---

[3] We note the Hospital Defendants also try to distinguish *Gardner*'s holding with respect to any respondeat superior allegations made by Gomez. They argue any claim Gomez brought under respondeat superior that is based on Dr. Rajajoshiwala's position as the medical director for Bridges Center does not fall within *Gardner*'s exception to the expert report requirement. They emphasize Gomez's allegations in her original petition of Dr. Rajajoshiwala's breach of the standard of care do not fall within the scope of employment or authority of a medical director. Instead, they emphasize that the allegations of Dr. Rajajoshiwala breaching the standard of care relate to his practice as a physician. Gomez's petition, however, is not so limited and contains much broader allegations. That is, Gomez's petition does not allege that Dr. Rajajoshiwala's position as the medical director is the sole basis for the Hospital Defendants being vicariously liable. As noted above, Gomez's petition alleges the interrelationships between Dr. Rajajoshiwala and the Hospital Defendants that relate to Dr. Rajajoshiwala's practice as a physician.

## CONCLUSION

Because Gomez has brought negligence claims based on vicarious liability against the Hospital Defendants, she did not need to serve an expert report specifically naming them. We, therefore, affirm the trial court's order denying the Hospital Defendants' motion to dismiss.


Karen Angelini, Justice