

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00064-CV

**PM MANAGEMENT – WURZBACH NC, LLC**
**d/b/a Trisun Care Center Wurzbach**,
Appellant

v.

Steven Vernon **ARMSTRONG**, as Administrator of the Estate of Helen Armstrong, Deceased,
and Steven Vernon Armstrong on Behalf of Michael Darrell Armstrong, an Incapacitated Person
and Sole Wrongful Death Beneficiary of Helen Armstrong, Deceased,
Appellees

From the 288th Judicial District Court, Bexar County, Texas
Trial Court No. 2013-CI-01117
Honorable Gloria Saldaña, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:    Karen Angelini, Justice
            Marialyn Barnard, Justice
            Patricia O. Alvarez, Justice

Delivered and Filed:  June 18, 2014

AFFIRMED

This is an accelerated appeal from the trial court's order denying appellant PM Management — Wurzbach NC, LLC d/b/a Trisun Care Center Wurzbach's ("Trisun") motion to dismiss pursuant to Section 74.351(b) of the Texas Civil Practice and Remedies Code. We affirm the trial court's judgment.

**BACKGROUND**

The underlying suit is a health care liability claim arising out of the care received by Helen Armstrong at a nursing home operated by Trisun. Ms. Armstrong was a resident of Trisun's nursing home from August 27, 2011, until her death from pneumonia on February 8, 2012. The underlying causes of her death were attributed to an on-going urinary tract infection (UTI) and septicemia.

After Ms. Armstrong's death, Steven Vernon Armstrong, as administrator of the estate of Helen Armstrong and on behalf of Michael Darrell Armstrong, an incapacitated person, (collectively "Armstrong") sued Trisun alleging various instances of negligence resulting in Helen Armstrong's pain, suffering, mental pain and anguish, and untimely death. Within 120 days of filing suit, Armstrong served Trisun with an expert report prepared by Michael P. Zeitlin, M.D. ("Dr. Zeitlin") pursuant to section 74.351(a) of the Texas Civil Practice and Remedies Code. Dr. Zeitlin's report included his qualifications as an expert, provided a timeline of Ms. Armstrong's care at Trisun, and included sections discussing the standard of care, breaches, and causation with regard to the theories of liability alleged in Armstrong's petition. The injuries and conditions noted by Dr. Zeitlin included: skin tears, abrasions, bruises, UTIs, and respiratory compromise related to exacerbation of chronic obstructive pulmonary disease.

Trisun filed objections to Dr. Zeitlin's report and a motion to dismiss Armstrong's claims pursuant to section 74.351(b) of the Texas Civil Practice and Remedies Code, claiming the expert report was deficient. The trial court overruled Trisun's objections and denied its motion to dismiss. Trisun subsequently perfected this appeal.

**ANALYSIS**

In its sole issue on appeal, Trisun contends Dr. Zeitlin's expert report is not a good faith effort to comply with the requirements of section 74.351 of the Texas Civil Practice and Remedies

Code and that the trial court erred in denying its motion to dismiss. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a), (b) (West Supp. 2013). We review the trial court's ruling on Trisun's motion to dismiss for an abuse of discretion. *See Am. Transitional Care Ctrs. Of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877–78 (Tex. 2001); *Sw. Gen. Hosp., L.P. v. Gomez*, 357 S.W.3d 109, 111 (Tex. App.—San Antonio 2011, no pet.). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). Under this standard, we may not substitute our judgment for the trial court's. *Id.* We also may not determine the trial court abused its discretion merely because we would have decided the matter differently. *See Samlowski v. Wooten*, 332 S.W.3d 404, 410 (Tex. 2011).

The expert report required by section 74.351(a) serves two purposes: (1) informing the defendant of the specific conduct the claimant is questioning, and (2) providing a basis for the trial court to conclude the claims have merit. *Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 630 (Tex. 2013); *Palacios*, 46 S.W.3d at 879. A valid expert report must: (1) fairly summarize the applicable standard of care; (2) explain how a physician or health care provider failed to meet that standard; and (3) establish the causal relationship between the failure and the harm alleged. *Potts*, 392 S.W.3d at 630; TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). "A report that satisfies these requirements, *even as to one theory only*, entitles the claimant to proceed with a suit against the physician or health care provider." *Potts*, 392 S.W.3d at 630 (emphasis added). All of the information needed for our inquiry must be found within the four corners of the expert report. *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010). An expert report that merely states the expert's conclusions about the standard of care, breach, and causation does not fulfill the purposes of a report under section 74.351. *See Palacios*, 46 S.W.3d at 879.

Here, Trisun contends Dr. Zeitlin's report is deficient in regards to every required element of a valid expert report for each of the following injuries claimed by Armstrong: skin tears, abrasions, and bruises, UTIs, and respiratory compromise related to COPD.

### *Skin Injuries to Helen Armstrong*

The "Facts/History" section of Dr. Zeitlin's expert report indicates that Ms. Armstrong was a patient of Trisun from August 27, 2011, through her death on February 8, 2012. During her residency at Trisun, Dr. Zeitlin opined that Ms. Armstrong suffered the following injuries:

1.) On August 29, 2011, Ms. Armstrong was combative with activities of daily living including incontinence care (she punched, scratched, and became increasingly agitated). Although the cause was listed in nurse notes as "unknown," Ms. Armstrong reportedly had the following bruises after her combative episode: "*a bruise on the left arm bruise measuring '3 x 3' and a bruise on the right arm measuring '3 x 2.5'*." The bruises were reported as "resolved" by September 26, 2011.

2.) On November 1, 2011, Ms. Armstrong was combative during her morning perineal care and scratched a certified nurse aid ("CNA"). According to the nurse's notes recounted in the report, "[s]he was with swing arm and Rt. hand made contact with the wall." According to Dr. Zeitlin, as a result of this incident, Ms. Armstrong "sustained *a skin tear of approximately two inches between the first and second digits at the knuckle region*" of her right hand. The report also indicates this skin tear became scabbed and eventually "resolved" approximately a month later.

3.) On January 23, 2012, a Trisun report noted Ms. Armstrong had "*bruising to the entire right hand, cause unknown*."

Trisun contends Dr. Zeitlin's expert report discussing these injuries, and others, is deficient to show Armstrong has a meritorious claim against it, i.e., that the skin tears and bruising resulted from Trisun's negligence. *See Palacios*, 46 S.W.3d at 879. We disagree.

As stated above, in order for an expert's report to constitute a good faith effort to comply with section 74.351, it must provide, in a nonconclusory manner: (1) the applicable standard of care, (2) a breach of that standard, and (3) a causal connection between the breach and the harm

alleged. *See Potts*, 392 S.W.3d at 630. We begin by addressing whether Dr. Zeitlin's report set forth an applicable standard of care with regard to the skin tear sustained by Ms. Armstrong.

*Standard of Care*

The general standard of care for a health care provider like Trisun is what an ordinarily prudent health care provider would do under the same or similar circumstances. *See Palacios*, 46 S.W.3d at 880. Clearly identifying the standard of care is critical because whether a defendant breached its duty to a patient cannot be determined absent specific information about what the defendant should have done differently. *Id.*

Here, Dr. Zeitlin's report included numerous standards of care for a nursing home treating a patient who is susceptible to skin injury like Ms. Armstrong. These standards of care included the following:

1.) [N]ursing staff [are required] to maintain a safe and comfortable environment for residents. This includes maintaining a physical and psychosocial environment free from any actual or perceived threats or hazards. The physical environment should be free from any potential sources of injury. It should be safe and clean with adequate facilities and amenities to meet all of the basic physical needs of the resident. The psychological environment should be non-threatening and the resident should feel comfortable and safe without fear of injury or abuse from staff or other residents.

2.) Abuse has many components including physical, psychological, financial, and/or sexual abuse. Indicators of abuse may include withdrawal, sleep and behavior disturbances, *combativeness*, anxiety, fear of certain individuals, *unexplained bruises*, *skin tears*, or other injuries. [T]he nursing staff is bound to maintain the rights of the residents and to protect them from any form of abuse. If abuse is suspected, it is the duty of the staff to investigate the abuse, intervene when appropriate and to report the abuse to the proper authorities. . . . The nursing staff is also bound to report any potential symptoms of abuse such as those described and to investigate any potential abuse thoroughly to document the circumstances of any event thoroughly in the medical records, and to ensure the circumstances found to cause the injury are prevented from recurring. (Emphasis added).

3.) In addition to keeping the resident free from abuse and neglect, staff should protect the residents by keeping their fingernails trimmed, being careful with what jewelry they wear, ensuring there is padding on bed rails and wheelchairs,

taking care when transporting patients, and taking care when handling patients in a shower chair, handling during use with any other mechanical or supportive device, and when generally handling and interacting with a resident during a procedure or activities of daily living.

Trisun argues these standards of care are entirely conclusory, generally vague, and lack the requisite, specific information as to what Trisun should have done differently. We disagree.

The trial court did not abuse its discretion in concluding the standards of care set out above specifically informed Trisun of duties it owed to Ms. Armstrong. These duties, stated generally, include: a duty to maintain a safe and comfortable environment; a duty to prevent, investigate, and report abuse; and a duty to protect residents during handling and activities of daily living. There was sufficient information for the trial court to conclude the duties listed above sufficiently informed Trisun of specific levels of care it allegedly should have provided for Ms. Armstrong. Accordingly, we hold the trial court did not err in determining this standard of care was sufficient for the purposes of section 74.351. *See Palacios*, 46 S.W.3d at 880.

*Breach*

Dr. Zeitlin's report asserts Trisun breached the standards of care discussed above in multiple ways. Specifically:

1.) The nursing staff breached the standard of care by *failing to protect* the resident, a wheelchair bound individual, from injury. (Emphasis added).

2.) The nursing staff *failed to maintain a safe environment* for the resident which was free from actual or perceived threats or hazards and free from any potential sources of injury. (Emphasis added).

3.) The nursing staff breached the standard of care by *failing to investigate* the circumstances surrounding the causes of [Ms. Armstrong's] skin tears, scratches, bruises whether it be from falls or abuse and breached the standard of care by *failing to document* in her chart the result of any investigations. (Emphasis added).

Trisun argues the breaches set out above are impermissibly conclusory because Dr. Zeitlin "offers essentially no description of the breach." Again, we disagree.

- 6 -

An expert report is conclusory when it does "not put the defendant or the trial court on notice of the conduct complained of." *See Palacios*, 46 S.W.3d at 880. Here, we hold the trial court did not err in concluding that Dr. Zeitlin's report put Trisun on notice that Armstrong contends Trisun: failed to protect Ms. Armstrong, failed to maintain a safe environment for Ms. Armstrong, failed to investigate the circumstances of Ms. Armstrong's injuries, and failed to document the results of any investigations. This was sufficient for the trial court to conclude Trisun was on notice of the conduct complained of and the report sufficiently described the breaches to the applicable standard of care. However, even though a breach has been shown in the report, the expert must establish the causal relationship between the breach and the harm alleged. *Potts*, 392 S.W.3d at 630.

*Causation*

When determining whether an expert report sufficiently set forth a causal relationship, we recognize: "[i]t is not enough for an expert simply to opine that the defendant's negligence caused the plaintiff's injury. . . [t]he expert must also, to a reasonable degree of medical probability, explain the *how and why* the negligence caused the injury." *Jelinek*, 328 S.W.3d at 536 (emphasis added). Here, we hold the trial court did not abuse its discretion in determining Dr. Zeitlin's report adequately explained how and why Trisun's alleged negligence caused Ms. Armstrong's skin tears, bruises, and abrasions.

After asserting that Trisun breached its standard of care in multiple ways, Dr. Zeitlin explained that:

> The multiple bruises, skin tears, bumps, and other injuries sustained by [Ms. Armstrong] are consistent with improper handling of the resident and equipment utilized by the resident as described above. It is my opinion that the skin tears, bruises, abrasion were the result of breaches of the standard of care by the nursing staff. Specifically, in reasonable medical probability the injuries of skin tears, bruises and abrasions to [Ms. Armstrong's] skin were a result of *blunt traumas* associated with *improper care* of an agitated resident suffering from dementia, and

*mismanagement of handling* of the resident and equipment utilized by the resident. (Emphasis added).

Trisun contends this language does not explain how or why its alleged breaches caused Ms. Armstrong's injuries and requires this court to impermissibly infer causation. Once again, we disagree.

As presented above, Dr. Zeitlin's report illustrates how ("blunt trauma") Ms. Armstrong's injuries ("skin tears [and] bruises") are causally connected to Trisun's breaches ("improper care" and "mismanagement of handling") of the standard of care (e.g. duty to maintain a safe and comfortable environment and protect residents during handling and activities of daily living) owed to a resident of its nursing home. Accordingly, we hold the trial court was within its discretion when it determined Dr. Zeitlin's report sufficiently explained how and why Trisun's alleged negligence resulted in Ms. Armstrong's injury, *see id.*, and therefore effectively established the required causal connection between the breach and the harm alleged. *See Potts*, 392 S.W.3d at 630.

Having reviewed the portion of Dr. Zeitlin's report regarding Ms. Armstrong's skin injuries, we hold the trial court was within its discretion to find the report serves the purposes of an expert report required by section 74.351(a) of the Texas Civil Practice and Remedies Code. Dr. Zeitlin informed Trisun of the applicable standards of care, the breaches of those standards, and the causal connection between the breaches and the harm alleged. This was a sufficient basis to allow the trial court to conclude Armstrong has at least one meritorious claim with regard to Ms. Armstrong's injuries. *See Palacios*, 46 S.W.3d at 879. Accordingly, we hold the trial court did not abuse its discretion in overruling Trisun's objections and denying its motion to dismiss. Because we have determined the trial court had sufficient information to conclude Armstrong met the requirements of section 74.351 for at least one claim, we need not address the sufficiency of

the report with regard to the other alleged injuries covered in the report. *See Potts*, 392 S.W.3d at 632; *see also Select Specialty Hosp.-Houston Ltd. P'ship v. Simmons*, No. 01-12-00658-CV, 2013 WL 3877696 at n.4 (Tex. App.—Houston [1st Dist.] July 25, 2013, no pet.) ("Because we have concluded that the reports are sufficient as to the claims related to bedsores, we need not reach Select Specialty's arguments about plaintiffs' other claims.").

### *Sanctions*

Armstrong suggests Trisun has filed a frivolous appeal, and requests sanctions pursuant to Rule 45 of the Texas Rules of Appellate Procedure. Rule 45 authorizes this court to award a prevailing party just damages if we determine that an appeal is frivolous after considering the record, briefs, and other papers filed in this court. *Gard v. Bandera Cnty. Appraisal Dist.*, 293 S.W.3d 613, 619 (Tex. App.—San Antonio 2009, no pet.); TEX. R. APP. P. 45. Determining whether to grant sanctions for frivolous appeals is a matter of discretion this court exercises with prudence and caution. *Gard*, 293 S.W.3d at 619. We grant sanctions under Rule 45 only after careful deliberation and in truly egregious circumstances. *Id.*

"If an appellant's argument on appeal fails to convince us but has a reasonable basis in law and constitutes an informed, good-faith challenge to the trial court's judgment, sanctions are not appropriate." *Id.* Such is the case here. Trisun presented the court with ample law and argument to support its good faith challenge of Dr. Zeitlin's ultimately sufficient section 74.351 report. Accordingly, the request for sanctions is denied.

### CONCLUSION

Based on the foregoing, we affirm the trial court's judgment.

Marialyn Barnard, Justice