# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00209-CV

**Seton Family of Hospitals d/b/a Seton Medical Center Williamson, Appellant**

**v.**

**Tomaurz White as Administrator of the Estate of Latoya Jones and as Next Friend of A.W., A Minor; Gale Machon Jones; and Clarence Jones, Appellees**

FROM THE PROBATE COURT NO. 1 OF TRAVIS COUNTY
NO. C-1-PB-18-001576, THE HONORABLE GUY S. HERMAN, JUDGE PRESIDING

## O P I N I O N

Seton Family of Hospitals d/b/a Seton Medical Center Williamson ("Seton") appeals from the trial court's order denying its motion to dismiss the health-care-liability claims of plaintiff Tomaurz White as Administrator of the Estate of Latoya Jones and as next friend of A.W., a Minor, and plaintiff-intervenors Gale Machon Jones and Clarence Jones ("Plaintiffs"). In two issues on appeal, Seton asserts that Plaintiffs' statutorily required expert reports, *see* Tex. Civ. Prac. & Rem. Code § 74.351, were deficient and that, consequently, Seton was entitled to dismissal of the Plaintiffs' claims against it and to its attorney's fees. We will affirm the trial court's order.

**BACKGROUND**

Plaintiffs allege that Latoya Jones gave birth to A.W. at Seton Medical Center-Williamson on June 14, 2016, and was released from the hospital on June 17, 2016. Two days later, Jones returned to Seton complaining of fever, headache, dysuria, and elevated blood pressure. She was evaluated and discharged from the hospital that same day. The next morning, Jones was found non-responsive in her bed, and she died on June 22, 2016.

Plaintiffs filed suit against Seton, other health-care entities, and multiple physicians who had treated Jones, alleging that they were negligent in their evaluation and treatment of Jones and that this negligence was the proximate cause of her death.[1] The petition included the following allegations:

> Through the substandard treatment of Latoya Jones, Defendants, and each of them, either individually and/or by their agents, representatives and/or employees, failed to adhere to the applicable standards of medical care. . . .
>
> . . . .
>
> Upon information and belief, at all relevant times, the healthcare workers treating Latoya Jones during the relevant time period described herein, were agents or employees or servants of Defendants, and each of them. The substandard treatment of Latoya Jones was performed within the course and scope of their duties each of the Defendants. Therefore, in addition to acts of medical negligence, Defendants are vicariously liable for the negligence of these healthcare workers through the doctrine of respondeat superior and all other applicable vicarious liability doctrines, at law and equity, including ostensible agency or apparent authority, if applicable.

---

[1] In addition to Seton, the defendants were the Austin Radiological Association; Emergency Physicians of Central Texas, PA; Central Texas OBGYN Associates, PLLC; Oakwood Women's Centre, PA; Dr. David Jon Shaw; Dr. Laura Pittman; Beth L. Thai, M.D.; and Dr. Timothy Leeds. Plaintiffs subsequently nonsuited defendants Austin Radiological Association, Dr. David Jon Shaw, and Beth L. Thai, M.D.

Plaintiffs later served two expert reports on the defendants, one related to the conduct of Dr. Timothy Leeds, the assistant surgeon who had helped deliver A.W., and the other related to the conduct of Dr. Laura Pittman, the emergency room physician who had evaluated and treated Jones upon her return to Seton. Seton filed a motion to dismiss, asserting that the expert reports failed to implicate Seton in the alleged negligence of the physicians. The trial court held a hearing on the motion and later denied the motion to dismiss. This interlocutory appeal followed. *See id*. § 51.014(a)(9).

## GOVERNING LAW

"Chapter 74 of the Civil Practice and Remedies Code, also known as the Texas Medical Liability Act [TMLA], requires health-care-liability claimants to serve an expert report upon each defendant not later than 120 days after that defendant's answer is filed." *Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 223 (Tex. 2018) (citing Tex. Civ. Prac. & Rem. Code § 74.351(a)). A "core purpose" of the expert-report requirement is to "identify and eliminate frivolous health care liability claims expeditiously, while preserving those of potential merit." *Samlowski v. Wooten*, 332 S.W.3d 404, 410 (Tex. 2011). "An adequate expert report is how the statute distinguishes between" frivolous and meritorious claims. *Id*. at 411.

"An expert report is sufficient under the Act if it 'provides a fair summary of the expert's opinions . . . regarding applicable standards of care, the manner in which the care rendered . . . failed to meet the standards, and the causal relationship between the failure and the injury.'" *Abshire*, 563 S.W.3d at 223 (quoting Tex. Civ. Prac. & Rem. Code § 74.351(r)(6)). "Importantly, the trial court need only find that the report constitutes a 'good faith effort' to comply with the statutory requirements." *Id*. (quoting Tex. Civ. Prac. & Rem. Code § 74.351(l)).

3

"To constitute a 'good-faith effort,' the report must provide enough information to fulfill two purposes: (1) it must inform the defendant of the specific conduct the plaintiff has called into question, and (2) it must provide a basis for the trial court to conclude that the claims have merit." *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). "In analyzing a report's sufficiency under this standard, we consider only the information contained within the four corners of the report." *Abshire*, 563 S.W.3d at 223; *see Baty v. Futrell*, 543 S.W.3d 689, 693–94 (Tex. 2018).

## STANDARD OF REVIEW

We review a trial court's ruling on the adequacy of an expert report under the TMLA for an abuse of discretion. *Abshire*, 563 S.W.3d at 223; *American Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877 (Tex. 2001). A trial court abuses its discretion when it "renders an arbitrary and unreasonable decision lacking support in the facts or circumstances of the case" or "acts in an arbitrary or unreasonable manner without reference to guiding rules or principles." *Samlowski*, 332 S.W.3d at 410.

## ANALYSIS

The report of Dr. Carl Chudnofsky, at issue here, describes the alleged conduct of emergency room physician Dr. Laura Pittman, M.D.[2] In the report, Dr. Chudnofsky describes in detail the standard of care of an emergency room physician treating patients "in the early postpartum period," discusses how Dr. Pittman breached that standard of care in Jones's case, and explains how that breach was the proximate cause of Jones's death. Specifically, the report includes the following information:

---

[2] Plaintiffs do not dispute that the other expert report, describing the conduct of Dr. Timothy Leeds, M.D., fails to implicate Seton.

4

On June 19, 2016, Latoya Jones was a 30-year-old woman who presented to the emergency department at Seton Medical Center-Williamson with a triage complaint of, "Fever, C section Tuesday. c/o fever and HTN '171/98' e/o migraines" . . . .

Ms. Jones was then evaluated by emergency physician Laura Pittman, MD, who performed a comprehensive history and physical examination. . . . Dr. Pittman also performed a Review of Systems that was negative except for dysuria and headache and a physical examination that was unremarkable. However, it does not appear from the emergency department records that reflex testing was performed.

. . . .

Ms. Jones was discharged from the emergency department with a diagnosis of mild hypertension, cephalgia, and urinary tract infection. . . . On June 20, 2016, Ms. Jones was found unresponsive in her bed by family members. . . . On June 22, 2016, Ms. Jones underwent clinical brain death testing that was consistent with brain death . . . . Shortly after, life support measures were withdrawn and Ms. Jones was pronounced dead at 4:20 AM on June 22, 2016.

. . . .

Based on the documents reviewed to date, my experience, training and education, and based on the standard of care for an emergency physician in the same or similar practice and circumstances as Dr. Pittman, it is my professional opinion that Dr. Pittman committed acts and omissions in her treatment of Latoya Jones that were negligence [and] that were a proximate cause of her injuries and death.

Preeclampsia is a serious complication of pregnancy caused by placental and maternal vascular dysfunction. It occurs in the last half a pregnancy or the early postpartum period. Preeclampsia is characterized by hypertension . . . .

When patients in the early postpartum period present to the emergency department with elevated blood pressure, the standard of care requires the emergency physician to perform a comprehensive evaluation aimed at identifying the presence of preeclampsia. This evaluation must include a complete history

5

and physical examination, including reflex testing as hyperreflexia is a common finding in patients with preeclampsia. . . . If the results of the emergency department evaluation indicate the presence of preeclampsia, the standard of care requires the patient to be admitted for continued blood pressure management, seizure prophylaxis, and close observation for complications such as stroke, bleeding, and renal failure.

In this case, Latoya Jones presented to the emergency department at Seton Medical Center-Williamson 2 days after a cesarean section complaining of dysuria, urgency, and frequency; elevated blood pressure; and a severe headache. In addition, her history was significant for gestational hypertension during the recent pregnancy. The results of her emergency department evaluation were highly consistent with a diagnosis of preeclampsia with severe features. . . .

It is my opinion to a reasonable degree of medical probability that Dr. Pittman fell below the standard of care by failing to test Ms. Jones' reflexes, failing to diagnose preeclampsia, and failing to admit Ms. Jones to the hospital for continued blood pressure management, seizure prophylaxis, and close observation.

. . . .

Further, it is my opinion to a reasonable degree of medical probability that had Ms. Jones been admitted to the hospital, she would have received appropriate treatment (e.g., magnesium) and close observation that more likely than not would have prevented the intracranial hemorrhage and venous thrombosis that caused her death.

Consistent with the statutory requirements, the above report provides: (1) a fair summary of the applicable standards of care; (2) the manner in which Dr. Pittman failed to meet those standards; and (3) the causal relationship between that failure and Jones's death. *See* Tex. Civ. Prac. & Rem. Code § 74.351(r)(6). Thus, the report adequately implicates the conduct of Dr. Pittman, and, for purposes of this appeal, Seton does not contend otherwise. Instead, Seton asserts that the report is inadequate as to its own conduct. Seton argues that the report "does not implicate the health care provider or allege or address in any way an employment or agency

6

relationship between the health care provider and the physician whose conduct is addressed in the report." Moreover, Seton contends that because Plaintiffs sued multiple defendants, including five health-care entities and four individual physicians, the pleadings were inadequate to put Seton on notice that it was vicariously liable for Dr. Pittman's conduct.

The general rule is that when a plaintiff sues more than one defendant in a health-care liability claim, the expert report must set forth the standard of care for each defendant and explain the causal relationship between each defendant's individual acts and the injury. *See* Tex. Civ. Prac. & Rem. Code § 74.351(a), (r)(6); *Pharmacy Healthcare Sols., Ltd. v. Pena*, 530 S.W.3d 169, 175 (Tex. App.—Eastland 2015, pet. denied); *University of Tex. Med. Branch v. Railsback*, 259 S.W.3d 860, 864 (Tex. App.—Houston [1st Dist.] 2008, no pet.). This includes a hospital if a plaintiff is alleging that the hospital itself was directly negligent for the plaintiff's injuries. *See Railsback*, 259 S.W.3d at 864.

On the other hand, "[w]hen a party's alleged health care liability is purely vicarious, a report that adequately implicates the actions of that party's agents or employees is sufficient." *Gardner v. U.S. Imaging, Inc.*, 274 S.W.3d 669, 671–72 (Tex. 2008) (per curiam). Additionally, "when a health care liability claim involves a vicarious liability theory, either alone or in combination with other theories, an expert report that meets the statutory standards as to the employee is sufficient to implicate the employer's conduct under the vicarious theory." *Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 632 (Tex. 2013). "And if any liability theory has been adequately covered, the entire case may proceed." *Id*.

The Texas Supreme Court followed *Certified EMS, Inc.*, in *TTHR Ltd. Partnership v. Moreno*, 401 S.W.3d 41 (2013). In *Moreno*, the plaintiff sued a hospital and two of its physicians, alleging that the hospital was liable for injuries to her newborn child "because

7

of its own direct negligence as well as its vicarious liability for the negligence of its nurses and the two doctors" in delivering the child. *Id*. at 42–43. The expert reports focused not on the hospital's liability but on the conduct of the physicians, and the court concluded that the trial court did not abuse its discretion in finding the reports "adequate as to the claim that [the hospital] is vicariously liable for actions of the doctors." *See id*. at 44. The court further concluded that because the expert reports were adequate as to Moreno's vicarious-liability claim, her direct-liability claim against the hospital could also proceed. *See id*. at 45.

Here, as in *Moreno*, Plaintiffs are alleging that Seton was vicariously liable for the alleged negligence of the health-care workers who treated Jones while she was at Seton. Following the holdings in *Moreno*, *Certified EMS, Inc.*, and *Gardner*, the trial court would not have abused its discretion in finding that Dr. Chudnofsky's report, which, as discussed above, adequately implicates the conduct of Dr. Pittman, was thus adequate as to Plaintiffs' claim that Seton is vicariously liable for Dr. Pittman's conduct. *See Moreno*, 401 S.W.3d at 44; *Certified EMS, Inc.*, 392 S.W.3d at 627, 632–33; *Gardner*, 274 S.W.3d at 671–72.

Seton contends that *Moreno*, *Certified EMS, Inc.*, and *Gardner* do not apply here because in those cases, there was no challenge to the adequacy of the vicarious-liability allegations in the pleadings. In this case, in contrast, Seton characterizes Plaintiffs' vicarious-liability allegations as "vague, global, and conclusory" and argues that because the Plaintiffs named multiple health-care entities and multiple physicians as defendants, the pleadings failed to provide fair notice of how Seton was vicariously liable for Dr. Pittman's conduct.

As support for its position, Seton relies on *Southwest General Hospital L.P. v. Gomez*, 357 S.W.3d 109 (Tex. App.—San Antonio 2011, no pet.), a case in which the hospital defendants argued that there were no allegations of vicarious liability in the plaintiff's original

petition to support the application of *Gardner*. *Id*. at 112. The appellate court disagreed, observing that the petition alleged that the surgical facility where the alleged negligence occurred "was owned, operated, and managed by the hospital defendants"; that the defendant physician worked "directly with, by and through the [surgical facility], and act[ed] as its Medical Director"; that the physician had a "direct financial relationship" with the hospital defendants; and that the physician practiced "under the auspices of the [surgical facility]." *Id*. at 112–13. The court concluded that these allegations "sufficiently provided fair notice that the hospital defendants could be vicariously liable for [the physician's] conduct." *Id*. at 113.

There are no similarly specific allegations in Plaintiffs' pleadings here. However, that does not entitle Seton to dismissal of Plaintiffs' claims. The rules of civil procedure require that the pleadings "consist of a statement in plain and concise language of the plaintiff's cause of action," Tex. R. Civ. P. 45(b), and "contain a short statement of the cause of action sufficient to give fair notice of the claim involved," Tex. R. Civ. Proc. 47(a). "'A petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claim.'" *DeRoeck v. DHM Ventures, LLC*, 556 S.W.3d 831, 835 (Tex. 2018) (quoting *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex. 2000)). "The key inquiry is whether the opposing party 'can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant.'" *Id*. "When a party fails to specially except, courts should construe the pleadings liberally in favor of the pleader." *Horizon/CMS Healthcare Corp.*, 34 S.W.3d at 897.

Plaintiffs' petition named Seton, Dr. Pittman, and others as "Defendants" in the case. The petition further provided a brief description of the facts that preceded Jones's death,

including the fact that Jones was evaluated and treated at Seton Medical Center-Williamson, and made the following allegations:

> "[T]hrough the substandard treatment of Latoya Jones, Defendants, and each of them, either individually and/or by their agents, representatives and/or employees, failed to adhere to the applicable standards of medical care";

> "The acts and/or omissions of Defendants constitute medical negligence. Such conduct was the proximate cause of the injuries and damages suffered by Plaintiff based on the preventable death of Latoya Jones";

> "[A]t all relevant times, the healthcare workers treating Latoya Jones during the relevant time period described herein, were agents or employees or servants of Defendants"; and

> "Defendants are vicariously liable for the negligence of these healthcare workers through the doctrine of respondeat superior and all other applicable vicarious liability doctrines, at law and equity, including ostensible agency or apparent authority, if applicable."

These allegations were sufficient to put Seton on fair notice that Plaintiffs were claiming that Seton was vicariously liable for the negligence of the health-care workers who treated Jones, which would include the doctors named as defendants. Thus, *Moreno*, *Certified EMS, Inc.*, and *Gardner* apply here. Moreover, even if the pleadings were insufficient as to the legal nexus establishing Seton's vicarious liability for Dr. Pittman's conduct specifically, the appropriate remedy would have been for Seton to challenge *the pleadings*, not the expert report. Seton could have done so by filing either special exceptions to the petition or, if it believed the vicarious-liability claim to be "baseless," a motion to dismiss pursuant to Rule 91a. *See* Tex. R. Civ. P. 91 (providing for special exceptions to pleadings), 91a (providing for dismissal of cause of action that has no basis in law or fact); *Tenet Hosps. Ltd. v. Bernal*, 482 S.W.3d 165, 174–75

10

(Tex. App.—El Paso 2015, no pet.) (discussing applicability of "other remedies already provided by Texas law to address allegations of vicarious liability that are frivolous or made in bad faith"); *Southwest Gen. Hosp., L.P.*, 357 S.W.3d at 113 n.1 (noting that if hospital defendants were "unclear" as to physician's status as hospital employee or independent contractor for purposes of establishing vicarious liability, defendants "could have filed special exceptions to the petition"). Seton did not do so.

Instead, Seton challenged the expert report, which limits the scope of our review. When examining the four corners of that report, we cannot conclude that the trial court abused its discretion in finding the report to be sufficient. In addition to adequately implicating Dr. Pittman's conduct, which, as discussed above, is all that is required under *Gardner* and its progeny, the report specifies that Dr. Pittman evaluated and treated Jones at Seton Medical Center-Williamson, where Dr. Pittman was working at the time as an emergency physician. Thus, the report identifies Seton as the hospital where Dr. Pittman's alleged negligence occurred. Although the report does not specify whether Dr. Pittman was working at the hospital as Seton's employee or agent or as an independent contractor, these are legal distinctions, not specialized medical knowledge necessitating an expert report, and the absence of information regarding the physician's status at Seton does not entitle Seton to dismissal of Plaintiffs' claims at this stage of the case. *See Certified EMS, Inc.*, 392 S.W.3d at 632 ("[W]hile a full development of all liability theories may be required for pretrial motions or to convince a judge or jury during trial, there is no such requirement at the expert report stage."); *Palacios*, 46 S.W.3d at 879 ("[T]o avoid dismissal, a plaintiff need not present evidence in the report as if it were actually litigating the merits. The report can be informal in that the information in the report does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial.");

11

*McAllen Hosps., L.P. v. Gonzalez*, 566 S.W.3d 451, 459–60 (Tex. App.—Corpus Christi 2018, no pet.) (explaining that even if physicians implicated in expert report were not hospital employees, that "is not a proper basis for dismissing a health care liability claim under the expert-report rule"); *Tenet Hosps. Ltd.*, 482 S.W.3d at 171–74 (rejecting hospital's contention that expert report must specify how hospital was vicariously liable for physician's conduct); *see also Abshire*, 563 S.W.3d at 223 (observing that expert report "'need not marshal all the claimant's proof'" to survive dismissal (quoting *Palacios*, 46 S.W.3d at 878–79)); *Methodist Hosp. v. Addison*, 574 S.W.3d 490, 500 (Tex. App.—Houston [14th Dist.] 2018, no pet.) ("The report need not use 'magic words' and does not have to meet the same standards as evidence offered in a summary judgment proceeding or trial."); *Morningside Ministries v. Rodriguez*, No. 04-15-00049-CV, 2016 Tex. App. LEXIS 2157, at *4–7 (Tex. App.—San Antonio Mar. 2, 2016, pet. dism'd) (mem. op.) (explaining that although plaintiff would be "required to prove vicarious liability exists at trial," expert report need not establish vicarious liability).[3]

---

[3] As support for its argument that Plaintiffs were required to provide more specific information in the report regarding their vicarious-liability claim, Seton cites to *In re McAllen Medical Center*, 275 S.W.3d 458 (Tex. 2008) (orig. proceeding). The primary issue in *McAllen* was a hospital's direct liability for negligently granting credentials to a physician who was not board certified in thoracic surgery. *See id*. at 462–63. The court concluded that the expert reports were inadequate because the expert was not qualified to address the "specialized standard of care" involved in a "negligent credentialing claim." *See id*. The court then addressed briefly the "other causes of action" in the case, including a claim that the hospital was vicariously liable for the physician's negligence. *See id*. at 463–64. The court concluded summarily that the plaintiffs' expert reports were inadequate because nothing in the reports "suggest the hospital controlled the details of [the physician's] medical tasks (a requirement for hospital liability), and the plaintiffs do not argue otherwise on appeal." *Id*. at 463–64. *McAllen* was decided before *Gardner*, *Certified EMS, Inc.*, and *Moreno* (none of which cited to *McAllen*), and the court did not consider, as it did in those later cases, whether the expert reports would have been adequate as to the vicarious-liability claim if there had been an expert report that was adequate as to the physician's negligence.

On this record, we cannot conclude that the trial court abused its discretion in denying Seton's motion to dismiss for failure to comply with the expert-report requirements of Chapter 74. Consequently, Seton was not entitled to attorney's fees. We overrule Seton's issues on appeal.

## CONCLUSION

We affirm the trial court's order denying Seton's motion to dismiss.

_____
Gisela D. Triana, Justice

Before Chief Justice Rose, Justices Triana and Smith

Affirmed

Filed:   October 24, 2019

13